## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        v.

JONATHAN FARBER,
AARIF JAMANI, and
BRIAN KEASBERRY,

                              Defendants.

24-CV-00273 (JGK)

## DEFENDANT JONATHAN FARBER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES............................................................................. ii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT……………………...................................................................... 7

    A. Statement of Issues..................................................................................... 7

    B. Applicable Law ......................................................................................... 7

        1. Standards governing Rule 56(a) motions……........................................7

        2. Sections 5(a) and 5(c) claim elements.................................................. 7

        3. Affiliate status and the concept of control............................................ 8

    C. Analysis that Farber was not and is not an affiliate of County Line........................... 13

    D. Farber was not an "affiliate" or an "underwriter" of County Line
       for the purposes of the Rule 144 Safe Harbor.............................................15

    E. Farber is not an "underwriter" for the purposes of Section 4(a)(1)
       of the Securities Act..........................................................................17

CONCLUSION.................................................................................................. 18

CERTIFICATE OF FORMATTING................................................................. 20

CERTIFICATE OF SERVICE ......................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Essex Universal Corp. v. Yates*, 305 F.2d 572, 579 (2nd Cir. 1962) ............................................11

*SEC v. American Beryllium & Oil Corp.*, 303 F. Supp. 912, 915 (S.D.N.Y. 1969) ..............11, 15

*SEC v. Antoine Silver Mines, Ltd.*, 299 F. Supp. 414, 416 (N.D. I11. 1968) ................................13

*SEC v. Bond and Share Corp.*, 229 F. Supp. 88, 96 (W.D. Okla. 1963) ......................................13

*SEC v. Cavanagh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998),

    *aff'd*, 155 F.3d 129 (2d Cir. 1998) ..............................................................................7

*SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006) .....................................................17

*SEC v. Cavanagh*, 445 F.3d 105, 114 (2d Cir. 2006) .......................................................9

*SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006) . ............................................8

*SEC v. Cavanagh*, 445 F.3d 105, 114 n.19 (2d Cir. 2006) ..............................................8

*SEC v. Cavanagh*, 445 F.3d 105, 114 (2d Cir. 2006) .......................................................8

*SEC v. Culpepper*, 270 F.2d 241, 247 (2d Cir. 1959) ....................................................17

*SEC v. Franklin Atlas Corp.*, 154 F. Supp. 395, 398 (S.D.N.Y. 1957) ...................13, 15

*SEC v. Freiberg*, 2007 WL 2847007, *9 (D. Utah Sept. 12, 2007) .........................13, 14

*SEC v. Freiberg*, 2007 WL 2847007, *15 (D. Utah Sept. 12, 2007) ............................13

*SEC v. International Chem. Dev. Corp.*, 469 F.2d 20, 30 (10th Cir. 1972) ..................13

*SEC v. Lybrand*, 200 F. Supp. 2d 384, 395 (S.D.N.Y. 2002),
    (quoting *Cavanagh*, 1 F. Supp. 2d 337, 366 (S.D.N.Y. 1998)) .............................9

*SEC v. Murphy*, 626 F.2d 633, 648 (9th Cir. 1980) .....................................................17

*SEC v. North Am. Res. and Dev. Corp.*, 424 F.2d 63, (2d Cir. 1970) ..........................10

*SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) ..........................................................17

*Scotto v. Almenas,* 143 F.3d 105, 114-15(2d Cir.1998)....................................................8

*United States v. Wolfson*, 405 F.2d 779, 781 (2d Cir. 1968),
    *cert. denied*, 394 U.S. 946 (1969).................................................................10, 17

*United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968),
    *cert. denied*, 394 U.S. 946 (1969).................................................................13, 15

*Wilko v. Swan*, 127 F. Supp. 55, 57 (S.D.N.Y. 1955) ...................................................12

*Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) ...........................7

## Statutes

Securities Act of 1933 § 2(a)(4), 15 U.S.C. § 77b(4)......................................................................17

Securities Act of 1933 § 2(a)(11), 15 U.S.C. § 77b(11)...........................................................10, 17

Securities Act of 1933 § 4(a)(1), 15 U.S.C. § 77d(a)(1) ...............................................1, 8, 16, 17

Securities Act of 1933 §§ 5(a), 5(c), 15 U.S.C. §§ 77e(a), 77e(c) .............................................7, 16

Securities Act of 1933§ 17(a),  §15 U.S.C. § 77q(a) .....................................................................2

Securities Exchange Act of 1934, 15 U.S.C. § 77a *et seq.* .............................................................11

Securities Exchange Act of 1934 § 9(a), 15 U.S.C. § 78i(a) ...........................................................2

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78,(b) .........................................................2

## Rules and Regulations

Fed. R. Civ. P. 56(a), (e) ...................................................................................................................7

Securities and Exchange Commission Rule 10b-5(a), 17 C.F.R. § 240.10-b5(a) ............................2

Securities and Exchange Commission Rule 10b-5(a), 17 C.F.R. § 240.10-b5(c) ............................2

Securities and Exchange Commission Rule 144, 17 C.F.R. § 230.144.................1, 8, 12, 15, 16, 17

Securities and Exchange Commission 144(a)(1), 17 C.F.R. § 230.144(a)(1) ...........................1, 8

Securities and Exchange Commission Rule 144(b), 17 C.F.R. § 230.144(b) ...........1, 8, 12, 15, 16

Securities and Exchange Commission Rule 144(c) and (d); 17 C.F.R. § 230.144(c) and (d) .........15

Securities and Exchange Commission Rule 405, 17 C.F.R. § 230.405 ......................................8, 14

## SEC Administrative Decisions, No-Action Letters and Releases

American-Standard, 1972 SEC No-Act. LexisNexis 3787 at *1........................................ 11, 12, 13

*First Gen'l Resources Co.*, SEC No-Action Letter, [1988-89 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,251 at 78,253 (Aug. 23, 1988) ..........................................................................9

*In re Chicago Corp.*, Investment Co. Act Rel. No. 1203, 28 S.E.C. 463 (Aug. 24, 1948) ...............10

*In re Thompson Ross Sec. Co.*, Exchange Act Rel. No. 2455, 6 S.E.C. 1111 (Mar. 25, 1940).........10

*In re W.H. Bell & Co.*, Exchange Act Rel. No. 34-4292,
   29 S. E. C. 709, 1949 WL 818, at *3 (Aug. 4, 1949) ..........................................................10

In re Resources Corp. Int'l, Securities Act Rel. No. 2294,
   7 S.E.C. 689, 1940 SEC, at *53-55 (July 11, 1940) ...........................................................12

Mark Controls Corporation, 1972 SEC No-Act. LexisNexis 3008..................................................12

SEC Release No. 33-8869 (Dec. 6, 2007),
   72 Fed. Reg. 71546 (Dec. 17, 2007) n.65. ..........................................................................10

**Treatises**

1 Louis Loss *et al.*, *Securities Regulation* 591 (4th ed. 2013) ........................................................17

4 Louis Loss and Joel Seligman, *Securities Regulation* 122-47 (4th ed. 2013) ..............................10

4 Louis Loss and Joel Seligman, *Securities Regulation* 144 (4th ed. 2013) ...................................12

**Other Authorities**

A.A. Sommer, Jr., *Who's "In Control"? — SEC*, 21 Bus. Law. 559, 568-69 (1966) ....................14

A.A. Sommer, Jr., *Who's "In Control"? — SEC*, 21 Bus. Law. 559, 575 (1966) .................10, 11

Sidney Ravkind, *We New Wizards of Wall Street*, 66 Tex. B.J. 120, 126 n.32 (2003) .....................8

*The Review of Securities & Commodities Regulation* (Vol. 46 No. 16) ........................................16

## PRELIMINARY STATEMENT

Defendant Jonathan Farber ("Farber") hereby moves for partial summary judgment that Farber was not and is not an "affiliate" County Line Energy Corp. ("County Line"), as the term "affiliate" is defined under (i) Securities and Exchange Commission ("SEC") Rule 405, 17 CFR § 230.405, promulgated under the Securities Act of 1933, as amended (the "Securities Act") and (ii) SEC Rule 144(a)(1), 17 C.F.R. § 230.144(a)(1), promulgated under the Securities Act.

Farber argues that he is entitled to partial summary judgment because no genuine issue of material fact exists that would make him an "affiliate" of County Line.

Farber further argues that because he was and is not an affiliate of County Line, and to the extent that any sales of County Line securities are attributable to Farber, Farber was able to rely on two exemptions under the Securities Act to offer and sell County Line securities: the Section 4(a)(1) exemption and the Rule 144 "safe harbor" thereunder. Section 4(a)(1) of the Securities Act of 1933, as amended (the "Securities Act"), exempts from registration "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). In other words, a holder of securities may sell his securities without registration if he is not an issuer, dealer or underwriter. Rule 144 allows public resale of "restricted" securities of an issuer, such as County Line, that is not obligated to file reports with the SEC under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), owned for one year, subject to certain volume and other substantive limitations. 17 C.F.R. § 230.144.

If the SEC cannot prove that Farber was an affiliate, then, a priori, in addition to having exemptions from registration to resell any stock of County Line, it was not possible for Farber to participate as part of a control "group" (*see* Compl. ¶ 32) in the allegations in the Complaint related to (a) the SEC's first claim, that Farber committed Fraud in Connection with the Purchase or Sale of Securities in violation of Section 10 of the Securities Exchange Act of 1934 (the "Exchange

1

Act") and Rule 10b-5 promulgated thereunder (Compl. ¶¶ 105-108); (b) the SEC's second claim, that Farber committed Fraud in the Offer or Sale of Securities in violation of Section 17(a) of the Securities Act (Compl. ¶¶ 109-112); and (c) the SEC's fourth claim, that Farber participated in the Unregistered Offerings of Securities in violation of Sections 5(a) and 5(c) of the Securities Act (Compl. ¶¶ 117-120). If the foregoing three claims are dismissed, then only one claim remains for trial: the third claim, which is that Farber committed Market Manipulation in violation of Section 9(a) of the Exchange Act (Compl. ¶¶ 113-116).

## STATEMENT OF FACTS

The relevant undisputed facts are as follows:

1. Farber has assisted his mother, Lois Farber, in the operation of Wexford Industries Ltd., a Wyoming corporation ("Wexford"), since March 1, 2016. Declaration of Jonathan Farber in Support of His Motion for Partial Summary Judgment, dated July 7, 2025 ("Farber Decl.") ¶ 2.

2. Since March 1, 2016, Lois Farber and Farber have been the only persons who have been involved in the operations of Wexford. Farber Decl. ¶ 3.

3. Farber has never been a director or an officer of Wexford. Farber Decl. ¶ 4.

4. Farber has never owned, held title to, or otherwise possessed any shares of common stock or other securities of Wexford; and Farber does not otherwise have, and has never had, any beneficial ownership interest in Wexford by way of agreement, arrangement, understanding. Farber Decl. ¶ 5.

5. Lois Farber is the sole beneficial owner of common stock and any other securities of Wexford, and no other person has had any beneficial ownership interest in Wexford by

way of contract, arrangement, understanding, since she acquired all outstanding shares of common stock of Wexford on March 1, 2016. Farber Decl. ¶ 6.

6. Farber is the custodian of records at Wexford, meaning that he keeps all books, records and documents of Wexford.  Farber Decl. ¶ 7.

7. Farber has never, directly or indirectly, owned, held title to, or otherwise possessed any shares of common stock of County Line.  Farber Decl. ¶  8.

8. Farber understands that Rule 405 (17 CFR § 230.405), promulgated under the Securities Act of 1933, as amended (the "Securities Act"), defines the term "affiliate" as follows: "An *affiliate* of, or person *affiliated* with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified."  Farber Decl. ¶ 9.

9. Farber understands that under SEC Rule 144(a)(1), promulgated under the Securities Act, defines "affiliate" as follows: "An ***affiliate*** of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."  Farber Decl. ¶ 10.

10. Farber understands that SEC Rule 405 defines the term "control" as follows: "The term *control* (including the terms *controlling, controlled by* and *under common control with*) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  Farber Decl. ¶ 11.

11. Farber has never been an officer, director or affiliate of County Line.  Farber Decl. ¶ 12.

12. Farber has never had the right, directly or indirectly, to appoint an officer or director, or any employee or consultant of County Line.  Farber Decl. ¶ 13.

13. Farber has never possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of County Line, whether through the ownership of voting securities, by contract, or otherwise.  Farber Decl. ¶ 14.

14. Farber has never entered into a contract, arrangement or understanding with County Line or any other person, to buy, sell, vote, pledge, hypothecate, grant any security interest or lien in, any shares of common stock or other securities of County Line.  Farber Decl. ¶ 15.

15. Farber has never sold any shares of common stock or other securities of County Line, directly or indirectly, on behalf of County Line, an affiliate of County Line, or defendants Aarif Jamani and Brian Keasberry.  Farber Decl. ¶ 16.

16. Farber has never met, or spoken or otherwise communicated with, Eric Dena, who he understands was the Chief Executive Officer and a director of County Line from approximately July 5, 2018 to approximately August 1, 2019.  Farber Decl. ¶ 17.

17. In November 2021, Farber met Emanuel Margaretis, who he understands was the  Chief Executive Officer and a director of County Line from approximately August 1, 2019, to approximately September 22, 2023.  Farber met Mr. Margaretis over lunch in Beverly Hills, California, and during that lunch Mr. Margaretis talked to Farber about Mr. Margaretis's Grow Box invention, product and business, which Mr. Margaretis had brought to and made part of County Line, as well as other inventions of Mr. Margaretis, and asked Farber to consider investing approximately $150,000 in County Line.  Farber's and Mr. Margaretis's lunch meeting lasted approximately 75 to 90 minutes. Mr. Margaretis and Farber did not discus anything else during their lunch meeting.  Farber Decl. ¶ 18.

18. Subsequent to November 2021, Farber never again met Mr. Margaretis, but communicated with Mr. Margaretis (i) approximately twice by telephone, the conversations of which did

not last more than a few minutes and were only about Wexford's investment into County Line, and (ii) approximately three (3) times by e-mail, only regarding Wexford's investment in County Line.  Farber Decl. ¶ 19.

19. Farber has never communicated with Mr. Margaretis other than during his November 2021 lunch meeting with Mr. Margaretis, and through the approximately two (2) telephone calls and approximately three (3) emails, and Farber has never indirectly communicated with Mr. Margaretis through any person or other means. Farber Decl. ¶ 20.

20. Wexford has never been an affiliate of County Line.  Farber Decl. ¶ 21.

21. Farber understands that Wexford (i) has never held more than 3,800,000 shares of common stock, or 4.8%, of the issued and outstanding shares of common stock of County Line, based on the outstanding numbers of shares of common stock cited by the SEC in its Complaint filed with the Court in this matter, and (ii) still holds approximately 2,100,000 shares of such 3,800,000 shares of common stock of County Line.  Farber Decl. ¶ 22.

22. Wexford has never possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of County Line, whether through the ownership of voting securities, by contract, or otherwise.  Farber Decl. ¶ 23.

23. Wexford has never had the right, directly or indirectly, to appoint an officer or director, or any employee or consultant of, County Line. Farber Decl. ¶ 24.

24. Wexford has never sold any shares of common stock or other securities of County Line, directly or indirectly, on behalf of County Line, an affiliate of County Line, or defendants Aarif Jamani and Brian Keasberry. Farber Decl. ¶ 25.

25. All investments of Wexford in County Line were solely to invest in the grow box product and the business of County Line.  Farber Decl. ¶ 26.

26. Farber has never had or operated a business, partnership or venture with defendants Aarif Jamani and/or Brian Keasberry.  Farber Decl. ¶ 27.

27. Farber has never communicated, or ever had to communicate, by way of agreement, arrangement or understanding or otherwise, with Aarif Jamani or Brian Keasberry before making any decision.  Farber Decl. ¶ 28.

28. Farber has never had a conversation or otherwise communicated with defendants Aarif Jamani, Brian Keasberry or any other person about how to operate or manage County Line. Farber Decl. ¶ 29.

29. Wexford has never had or operated a business, partnership or venture with defendants Aarif Jamani and/or Brian Keasberry.  Farber Decl. ¶ 30.

30. Wexford has never communicated, or ever had to communicate, by way of agreement, arrangement or understanding or otherwise, with Aarif Jamani or Brian Keasberry before making any decision. Farber Decl. ¶ 31.

31. The first time Wexford ever sold any shares of common stock of County Line was on January 21, 2020.  Farber Decl. ¶ 32.

32. All County Line securities held by Wexford were acquired and are or were held in the ordinary course of business and were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of County Line and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect.  Farber Decl. ¶ 33.

# ARGUMENT

## A.  Statement of Issues.

The issue presented by this motion is whether, as a matter of law, Farber was an "affiliate" of County Line.

## B.  Applicable Law.

### 1.  Standards governing Rule 56(a) Motions.

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must identify specific facts to show there is a factual question that must be resolved at trial.  *See* Fed. R.Civ.P. 56(e). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see Scotto v. Almenas,* 143 F.3d 105, 114-15(2d Cir.1998)(collecting cases).

### 2.  Section 5(a) and 5(c) claim elements.

Sections 5(a) and (c) of the Securities Act require that securities be registered with the SEC before any person may sell or offer to sell such securities.   15 U.S.C. § 77e(a). A prima facie Section 5 violation requires proof of three elements: first, that no registration statement was filed or in effect as to the securities; second, that the defendant sold or offered to sell these securities; and third, that there was a use of interstate means in connection with the offer or sale. See *SEC v. Cavanagh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998), aff'd, 155 F.3d 129 (2d Cir. 1998). Once the SEC has established a prima facie case, the burden of proof shifts to the defendant to show that an

exemption or safe harbor from registration was available for the offer or sale of the security. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953); see also *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006)("Once a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption.").  As noted in the Preliminary Statement above, Farber argues that because he was not an affiliate of County Line, he could rely on two exemptions, the Section 4(a)(1) exemption and the Rule 144 "safe harbor" thereunder, with respect to any sale of securities of County Line attributed to him.

### 3. Affiliate status and the concept of control.

An "affiliate" is defined as "a person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with," an issuer.  17 C.F.R. § 230.405.

Almost identically, under Rule 144, "affiliate" is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." 17 C.F.R. § 230.144(a)(1).

 "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  Rule 405, 17 C.F.R. § 230.405.  Rule 144 does not have a definition of "control."

There is "no bright-line rule declaring how much stock ownership constitutes 'control' and makes one an 'affiliate'" under Rule 144. *SEC v. Cavanagh*, 445 F.3d 105, 114 n.19 (2d Cir. 2006). "Some commentators have suggested that ownership of something between ten and twenty percent is enough, especially if other factors suggest actual control." *Cavanagh*, 445 F.3d at 114 n.9 (citing *Sidney Ravkind, We New Wizards of Wall Street*, 66 Tex. B.J. 120, 126 n.32 (2003)(reviewing

cases and literature). In *Cavanagh*, the Second Circuit concluded that two partners, each holding nearly one-quarter of the company's stock in a small business and selling their shares as a block, would be affiliates by ownership because they were "controlling shareholders." *Cavanagh*, 445 F.3d at 114.

"The affiliate inquiry is based on the totality of the circumstances, 'including an appraisal of the influence upon management and policies of a corporation by the person involved.' Affiliates are most often officers, directors, or majority shareholders—people who exercise control and influence over the company's policies or finances." *SEC v. Freiberg*, 2007 WL 2847007, *15 (D. Utah Sept. 12, 2007). Courts have looked to whether or not the person in question was capable of obtaining the required signatures of the issuer and its officers and directors on a registration statement. *See SEC v. Lybrand*, 200 F. Supp. 2d 384, 395 (S.D.N.Y. 2002) (quoting *Cavanagh*, 1 F. Supp. 2d 337, 366 (S.D.N.Y. 1998)).

The SEC has consistently taken the position that the determination of "control" status is dependent in large part on the facts and circumstances involved and, therefore, has declined to state definitively what circumstances will result in a person being deemed to be in "control" of an issuer.  The SEC itself has provided little beyond the above-described provisions that provides any guidance as to whether a person will be considered in "control" in a particular case. *See, e.g., First Gen'l Resources Co.*, SEC No-Action Letter, [1988-89 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,251 at 78,253 (Aug. 23, 1988) ("[t]he Division [of Corporation Finance] has historically declined to express any view on the affiliation of any person to an issuer of securities on the ground that the question is a matter of fact best determined by the parties and their advisors.").

The governing case law similarly fails to provide any definitive legal standards that may be applied to determine whether a person is in "control."  As a result, resolution of this issue

necessarily turns on a consideration of the specific facts and circumstances surrounding each case. *See generally* 4 Louis Loss and Joel Seligman, *Securities Regulation* 122-47 (4th ed. 2013) (listing many of the factors weighed in determining whether a person is in "control"); A.A. Sommer, Jr., *Who's "In Control"? — SEC*, 21 Bus. Law. 559, 575 (1966) (same); *see also In re Chicago Corp.*, Investment Co. Act Rel. No. 1203, 28 S.E.C. 463 (Aug. 24, 1948) (discussing factors relevant to determining whether an investment company held the power to exercise a "controlling influence" over the management or policies of a company under the Investment Company Act of 1940).

The clearest indication of "control" is where a person or group owns a simple majority of the outstanding voting shares of a corporation. Thus, where one corporation owned 51% of the outstanding stock of a second corporation, the SEC held that it was "unquestioned" that the corporation owning such stock controlled the second corporation. *In re W.H. Bell & Co.*, Exchange Act Rel. No. 34-4292, 29 S. E. C. 709, 1949 WL 818, at *3 (Aug. 4, 1949); *see also SEC v. North Am. Res. and Dev. Corp.*, 424 F.2d 63, (2d Cir. 1970) (three co-conspirators in securities fraud were in control where collectively they owned 96.8% of a corporation's outstanding stock). At the same time, it should be noted that stockholdings of less than 51% may be sufficient to establish that a person or group is in control of an issuer. *See, e.g., United States v. Wolfson*, 405 F.2d 779, 781 (2d Cir. 1968) (corporation's largest individual stockholder was in "control" where, in conjunction with his family and "right-hand man," he owned over 40% of the outstanding shares), *cert. denied*, 394 U.S. 946 (1969); *see also In re Thompson Ross Sec. Co.*, Exchange Act Rel. No. 2455, 6 S. E. C. 1111 (Mar. 25, 1940) ("'Control' is not synonymous with the ownership of 51% of the voting stock of a corporation. Where power exists to direct the management and

policies of a corporation, 'control' within the meaning of Section 2(11) exists even though the persons who possess that power do not own a majority of the corporation's voting stock.").

Although there is no statute or case law that declares ownership of 10% or more of the voting stock of a corporation to be the equivalent of "control," commentators have noted that 10% ownership "has become something of a benchmark and when this is encountered a red warning flag should run up." Sommer, *supra*, at 568-69.  This is because the proxy statement rules and many of the SEC's registration forms require certain disclosure of 10% owners; in addition, the reporting and penalty provisions of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), apply to 10% owners, and 10% ownership is sufficient to deem a stockholder a "holding company" under the Holding Company Act.  However, applicable cases and SEC no-action letters suggest that 10% ownership requires other indicia of "control" before one will be deemed an "affiliate."  First, the SEC has stated that "a person's status as an officer, director, or owner of 10% of the voting securities of a company is not necessarily determinative of whether such person is a control person or member of a controlling group of persons," but instead just one factor to be considered. American-Standard, 1972 SEC No-Act. 387, at *1 (October 11, 1972). Second, both case law and the SEC have found 10% stockholders to not have control where some other entity with greater stockholdings or power to control existed.  *Essex Universal Corp. v. Yates*, 305 F.2d 572, 579 (2nd Cir. 1962) although not a securities case, indicated that where a stockholder owns a large enough percentage of stock to indicate control (28.3% in *Essex*), any presumption of control that arises should be rebuttable if the stockholder can show that there was at the time of the transaction "some other organized block of stock of sufficient size to outvote the block" owned by the stockholder. *See also SEC v. American Beryllium & Oil Corp.*, 303 F. Supp. 912, 915 (S.D.N.Y. 1969) (where one person was clearly a "controlling" person within the

meaning of the Act, it was unlikely that others could be found to be controlling persons except by virtue of their association with that one person).    SEC no-action letters also support this conclusion.  *See, e.g.*, Mark Controls Corporation, 1972 SEC No-Act. LexisNexis 3008, in which the SEC did not recommend any action where the stockholder in question owned 14.8% of Mark Control's common stock, while management owned 14% and a group that consistently supported management owned another 22%.

Service as an officer or membership on the board of directors of a corporation is another factor that will be considered when determining whether that person is in "control." *See, e.g.*, In re Resources Corp. Int'l, Securities Act Rel. No. 2294, 7 S.E.C. 689, 1940 SEC, at *53-55 (July 11, 1940) (finding control where, among other things, individuals were all officers, board members, and members of executive committee). However, the mere representation on a board of directors, absent other indicia of "control," is not necessarily dispositive of the issue.  *See, e.g.*, *Wilko v. Swan*, 127 F. Supp. 55, 57 (S.D.N.Y. 1955) (upholding special verdict by jury that director of corporation did not directly or indirectly control such corporation); *see also* Loss, *supra*, at 144 ("a person's being an officer or director does not create any <u>presumption</u> of control") (emphasis in original). In response to a direct inquiry from American-Standard as to whether "merely being an executive officer or director of a large, publicly-owned company . . . would be enough without more to establish a presumption that any of such executive officers or directors is a member of a 'controlling group'" under Rule 144, the SEC responded that:

> a person's status as an officer, director, or owner of 10% of the voting securities of a company is not necessarily determinative of whether such person is a control person or member of a controlling group of persons.  His status as an officer, director or 10% shareholder is one fact which must be taken into consideration, but, as you recognize, an individual's status as a control person or as a member of a controlling

> group is still a factual question which must be determined by considering other relevant facts in accordance with the test set forth in Rule 405 under the Act.

American-Standard, 1972 SEC No-Act. LexisNexis 3787, at *1.

Where a "control group" has been found to exist, its membership usually has been determined by reference to: (1) the parties which effectively have control over others in the group (*see, e.g., Wolfson*, 405 F.2d at 779 (individual, his immediate family, and his "right hand man" were in "control" where collectively they owned 40% of the company's outstanding stock); *American Beryllium*, 303 F. Supp. at 915 (control group member is in "control" to the extent it can influence the group)); (2) the relationships among group members based upon familial, business, or social ties (*see, e.g., SEC v. Antoine Silver Mines, Ltd.*, 299 F. Supp. 414, 416 (N.D. I11. 1968) (father was member of control group where son had beneficial ownership of all shares of company and acted on father's behalf); *SEC v. Franklin Atlas Corp.*, 154 F. Supp. 395, 398 (S.D.N.Y. 1957) (person was in "control" where, among other things, his sister was secretary, treasurer, and director of company who abided by his wishes)); or (3) a common purpose or motive (*see, e.g., SEC v. International Chem. Dev. Corp.*, 469 F.2d 20, 30 (10th Cir. 1972) (active participant in securities fraud deemed in "control"); *SEC v. Bond and Share Corp.*, 229 F. Supp. 88, 96 (W.D. Okla. 1963) (person was member of control group where he assisted and collaborated in scheme whereby the public was defrauded)).

**C. Analysis that Farber was not and is not an affiliate of County Line.**

Farber was never an affiliate of County Line because:

1. <u>*No Service as an Officer or Director*</u>:  Farber has never been an officer or a director of County Line (Farber Decl. ¶ 12)  – which does not meet the test that "affiliates are most

often officers, directors, or majority shareholders—people who exercise control and influence over the company's policies or finances." *See SEC v. Freiberg, supra, at* 9;

2. *Minimal Equity Ownership:*  Farber has never held any shares of common stock of County Line (Farber Decl. ¶ 8), and Wexford has never held more than 4.8% of the issued and outstanding shares of common stock of County Line (Farber Decl. ¶ 22) – 4.8% is far below the 10% ownership that "has become something of a benchmark and when this is encountered a red warning flag should run up." *See* Sommer, *supra*, at 568-69;

3. *No ability to affect the management or policies:*  Farber has never had the ability, by relationship, contract or otherwise, to affect the management or policies of County Line (Farber Decl. ¶ 23) – and the ability to affect the management or policies statutory is the core of the definition of control under Rule 405, 17 C.F.R. § 230.405; *see also SEC v. Freiberg, supra, at* 9;

4. *Only investment purpose of holding County Line securities:*  All County Line securities held by Wexford were acquired for investment purposes and were or are held in the ordinary course of business, and were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of County Line and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect (Farber Decl. ¶ 33);

5. *No Relationship with County Line.*  Farber has never had any relationship with County Line, other than in connection with Wexford as an investor of funds in County Line (Farber Decl. ¶¶ 8, 12 – 33);

6. _No business or venture with other defendants_:  Farber has never had or operated a business, partnership or venture with defendants Aarif Jamani and/or Brian Keasberry (Farber Decl. ¶ 27).

No facts elicited in discovery in the matter show any other indicia of affiliate status of Farber.  No facts exist that Farber provides business to County Line.  No facts exist which establish familial or social relationships between Farber and officers or directors of County Line, which is in contrast to the family and social relationships in _SEC v. Franklin Atlas Corp., supra, and SEC v.Wolfson, supra._  No facts exist that show that Farber controls the proxy machinery of County Line or can break a quorum by not voting shares of County Line.

Based on the foregoing, Farber has never been a "control" person of County Line, and, therefore, he is not, and has never been, an "affiliate" of County Line.  No reasonable juror could conclude that Farber was an affiliate of County Line by stock ownership or any other indicia of control because such facts simply do not exist.  Therefore, there is no genuine issue of material fact that Farber was and is not an affiliate of County Line.

**D.  Farber was not an "affiliate" or an "underwriter" of County Line for the purposes of the Rule 144 Safe Harbor.**

Rules 144 provides a non-exclusive safe harbor for the resales of securities into the public market. 17 C.F.R. § 230.144.  To clarify the interpretation of the term "_underwriter_," and the term "_issuer,_" and to provide greater assurance to issuers and investors, the SEC promulgated Rule 144, which creates a "safe harbor" by identifying certain conditions under which a person will be deemed to not be a statutory "underwriter." 17 C.F.R. § 230.144(b); _see also SEC v. Kern_, 425 F.3d 143, 148 (2d Cir. 2005)(interpreting predecessor Rule 144(k)). In general, Rule 144(b) provides that a person who is not an affiliate of an issuer, and has not been an affiliate during the

past three months, shall be deemed not to be an underwriter if the issuer meets certain public information requirements and at least a holding period one (1) year has elapsed since the date of acquisition of the shares of an issuer that does not report with the SEC (County Line does not report with the SEC) pursuant to the Securities Exchange Act of 1934, as amended.  17 C.F.R. § 230.144(b), (c) and (d).[1]

In its Complaint, the SEC makes no allegation that the conditions of Rule 144 were not met as it relates offers or sales of County Line stock by Wexford; the SEC only alleges that in providing County Line's transfer agent with legal opinions to remove the restrictive legend from Wexford's County Line stock, Farber misrepresented both Farber's and Wexford's status as an affiliate of County Line.  Compl. ¶¶ 59 and 60.  None of the other requirements and conditions of Rule 144 are at issue in the Complaint – only Farber's status as an affiliate of County Line.  As demonstrated above, neither Farber nor Wexford are an affiliate of County Line, and hence no misrepresentation was made that Farber was not an affiliate of County Line.  Therefore, any resales of County Line stock attributed to Farber or Wexford were also exempt under Rule 144 of the Securities Act, as provided in the legal opinions Wexford's counsel provided to County Line's transfer agent.

---

[1] It is also customary for an issuer's transfer agent to request an opinion from the company's securities counsel prior to removing a restrictive legend from a stock certificate. In this regard, the attorney is acting as the issuer's attorney. *See The Review of Securities & Commodities Regulation* (Vol. 46 No. 16) ("Transfer agents will typically remove such a legend upon an opinion of issuer's counsel that the resale is exempt from the Rule 144 holding period, notice, and manner of sale requirements (and sometimes a concurrence letter from the company," citing SEC Release No. 33-8869 (Dec. 6, 2007), 72 Fed. Reg. 71546 (Dec. 17, 2007) n.65 "[W]e do not object if issuers remove restrictive legends from securities held by non-affiliates after all of the applicable conditions in Rule 144 are satisfied.").

**E.  Farber is not an "underwriter" for the purposes of Section 4(a)(1) of the Securities Act.**

As noted above, Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c), require that securities be registered with the SEC before any person may sell or offer to sell such securities.   Section 4(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77d(a)(1), provides that the registration requirements of Section 5 do not apply to "transactions by any person other than an issuer, *underwriter*, or dealer." [Emphasis added].   This exemption exists primarily to allow ordinary re-sales between independent parties of securities already issued. *SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006); *SEC v. Culpepper*, 270 F.2d 241, 247 (2d Cir. 1959); *SEC v. Murphy*, 626 F.2d 633, 648 (9th Cir. 1980)("Section 4[a](1) was designed to exempt routine trading transactions with respect to securities already issued."); *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007); 1 Louis Loss *et al.*, *Securities Regulation* 591 (4th ed. 2013)(explaining that § 4[a](1) exempts an unregistered resale of blue-chip stock between friends from violating Section 5).

The term "*issuer*" is defined in Section 2(a)(4) of the Securities Act, 15 U.S.C. § 77b(4), in relevant part to mean "every person who issues or proposes to issue any security."

The term "*underwriter*" and the term "*issuer*" as it relates thereto are defined in Section 2(a)(11) of the Securities Act, 15 U.S.C. § 77b(11) as follows:

> The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking . . . . As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

see also *SEC v. Cavanagh*, 445 F.3d at 111; *United States v. Wolfson*, 405 F.2d 779, 782 (2d Cir. 1968).

17

Since Farber was not an affiliate ("…any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer," stated in Section 2(a)(11), in the paragraph above) of County Line, by definition, he was also not an "underwriter" under Section 2(11) of the Securities Act. Furthermore, Wexford cannot have purchased County Line stock with a view to distribution of County Line stock because, as demonstrated above, Farber and Wexford qualified for the safe harbor from being deemed an underwriter under Rule 144. Because Farber was not an underwriter, any offers or sales of County Line securities of Wexford that may be attributed to Farber were exempt from registration under Section 4(a)(1) of the Securities Act.

## CONCLUSION

For the reasons stated herein, the Court should grant Defendant's motion for partial summary judgment in its entirety. Specifically, Farber asks the Court to declare and order and judgment that:

1.  As a matter of law, Farber is not and has never been an "affiliate" of County Line under the Complaint in this matter;

2.  Dismiss the SEC's first claim, that Farber committed Fraud in Connection with the Purchase or Sale of Securities in violation of Section 10 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (Compl. ¶¶ 105-108); and

3.  Dismiss the SEC's second claim, that Farber committed Fraud in the Offer or Sale of Securities in violation of Section 17(a) of the Securities Act (Compl. ¶¶ 109-112); and

4.  Dismiss the SEC's fourth claim, that Farber participated in the Unregistered Offerings of Securities in violation of Sections 5(a) and 5(c) of the Securities Act (Compl. ¶¶ 117-120).

Dated:  July 7, 2025                        Respectfully submitted,

                                        _s/   Thomas E. Puzzo_
                                        Thomas E. Puzzo*
                                        Law Offices of Thomas E. Puzzo, PLLC
                                        3823 44th Ave. NE
                                        Seattle, Washington 98105
                                        Telephone: (206) 522-2256
                                        Email: tpuzzo@puzzolaw.com

                                        *Counsel for Defendant Jonathan Farber*
                                        *Admitted pro hac vice

19

## CERTIFICATE OF FORMATTING

I hereby certify that the number of words in the foregoing Memorandum of Law complies with the formatting rules of Rule II.D of the Individual Practices of Judge John G. Koeltl (dated July 6, 2022).

Dated:  July 7, 2025

By:     _s/   Thomas E. Puzzo_____
Thomas E. Puzzo
*Counsel for Defendant Jonathan Farber*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025, a true and correct copy of the above and foregoing was served in compliance with the Federal Rules of Civil Procedure upon the following by ECF:

Nita Klunder                                          J. Robert Smith
Marc Jones                                            Silver State Law, LLC
Alfred Day                                            61 Continental Drive
Securities and Exchange Commission                    Reno, Nevada 89509
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110

Jon Uretsky
Anna Adelstein
PULLP
111 Broadway, 8th Floor
New York, New York 10006


   _s/   Thomas E. Puzzo_____
Thomas E. Puzzo