SJ EXHIBIT
62
24-CV-00273 (JGK)

# *Action Stock Transfer Corp.*

*2469 E. Fort Union Blvd, Suite 214*
*Salt Lake City, Utah 84121*
*(801) 274-1088*

SCANNED

| Bill to: | COUNTY LINE ENERGY CORP<br>1060 CALLE NEGOCIO, STE G<br>SAN CLEMENTE, CA 92673 | Invoice Date<br>08/19/2019 | Invoice Number<br>112789 |
|---|---|---|---|
| Issuer | COUNTY LINE ENERGY CORP | Stock Type | Common |

| | | | | | |
|---|---|---|---|---|---|
| **Number of certificates issued** | 1 | **Cost per certificate** | $25.00 | **Total issue charge** | $25.00 |
| **Number of certificates cancelled** | 0 | | | **Cancelled Cert Charge** | $0.00 |
| LEGAL FEE/ NEW ISSUANCE; BOOK ENTRY | | | | **Recission Fees** | $0.00 |
| | | | | **Legal Fees** | $30.00 |
| | | | | **Rush Transfer** | $0.00 |
| | | | | **Shipping** | $0.00 |
| | | | | **Other** | $0.00 |
| Please forward your check. | | **Check No.** | 0 | **Amount Paid** | $0.00 |
| ***Action Stock Transfer Corp.*** | | | | **Total Due** | $55.00 |

**TRANSFER DETAILS**

In accordance with your request we hand you herewith the following certificates:

| Number | RS | Shareholder | Shares |
|---|---|---|---|
| 700031 | B | 0985358 BC LTD | 5,299,999 |
| | | **Total Shares Issued** | **5,299,999** |

Book Entry

RS - Restriction Code SS - Certificate involved in Stock Split



JB-082522-000276

**COUNTY LINE ENERGY CORP**
**3105 S Artesia St**
**Santa Ana, CA. 92704**
**949-521-0346**

# TREASURY ORDER
# ISSUANCE RESOLUTION

Corporate Resolution for the Issuance of New Shares of Common Stock

RESOLVED, that Action Stock Transfer Corporation, sole stock transfer agent for the above class of stock for the above Company, is authorized by the Company to issue common shares described below and increase the outstanding common shares on the books of the Company in the amount of 5,299,999 shares.

**ISSUANCE INSTRUCTIONS:**

| Legal Name | Street Address | City, State, Zip | Tax ID/SSN | Cost Basis | No. of Shares | Restricted or Free-Trading |
|---|---|---|---|---|---|---|
| 0985358 BC Ltd | 5376 Walter Place | Burnaby BC V5G4K2 | [redacted] | $26,500 | 5,299,999 | Free Trading |
| | | | | $.005/sh | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Reason for issuance (check one): Conversion/Exercise X or New Issuance ☐**

**If shares are to be issued free-trading (check one):**

**Issued pursuant to an Effective Registration Statement ☐ Effective Date ____________**
**or**
**Exempt from Registration X (Attach legal opinion)**

**DELIVERY INSTRUCTIONS: ISSUE AS BOOK ENTRY**

**First Class Mail: ☐**

**FedEx: ☐ UPS: ☐ DHL: ☐ Account number (required for overnight shipping): ____________________**

**Delivery address if different than shareholder addresses listed above:**

______________________________________________________________

______________________________________________________________

I, the undersigned, qualified Officer/Director of the above-named Corporation, do hereby certify that this is a true copy of a Resolution set forth and adopted on the date listed below, and that the said Resolution has not in any way been rescinded, annulled or revoked, but the same is still in full force and effect.

Dated: August 8, 2019

Emanuel Margaretis, CEO

RECEIVED
AUG 19 2019
By ________

JB-082522-000277

# NOTICE OF CONVERSION

--------------------

(To be executed by the Holder to convert all or any portion of the Note)

The undersigned hereby elects to convert $7,500 of the principal and $4,029.78 of the interest due on the Note issued by County Line Energy Corp., on February 2nd, 2015, into Shares of Common Stock of County Line Energy Corp. (the "Company"), according to the conditions set forth in such Note, as of the date written below.

Date of Conversion: August 7, 2019

Shares To Be Delivered: 2,305,956

Signature:________________________________________

Print Name: 0985358 BC Ltd

Address: [redacted]

| Date of Note | Principal Amount | Interest Accrued to Date | Principal Amount Converted | Interest Amount Converted | New Principal Balance Owing After Conversion | Shares to Be Delivered |
|---|---|---|---|---|---|---|
| February 2 2015 | $7,500.00 | $4,029.79 | $7,500.00 | $4,029.78 | $ 0.01 | 2,305,956 |

# NOTICE OF CONVERSION

---

(To be executed by the Holder to convert all or any portion of the Note)

The undersigned hereby elects to convert $2,000 of the principal and $1,335.86 of the interest due on the Note issued by County Line Energy Corp., on March 30th, 2015, into Shares of Common Stock of County Line Energy Corp. (the "Company"), according to the conditions set forth in such Note, as of the date written below.

Date of Conversion: August 7, 2019

Shares To Be Delivered: 667,172

Signature:____________________________________________

Print Name: 0985358 BC Ltd

Address: [redacted]

| Date of Note | Principal Amount | Interest Accrued to Date | Principal Amount Converted | Interest Amount Converted | New Principal Balance Owing After Conversion | Shares to Be Delivered |
|---|---|---|---|---|---|---|
| March 30 2015 | $ 2,000.00 | $1,335.86 | $2,000.00 | $1,335.86 | $ 0.00 | 667172 |

# NOTICE OF CONVERSION

---

(To be executed by the Holder to convert all or any portion of the Note)

The undersigned hereby elects to convert $2,000 of the principal and $1,272.92 of the interest due on the Note issued by County Line Energy Corp., on April 6th, 2015, into Shares of Common Stock of County Line Energy Corp. (the "Company"), according to the conditions set forth in such Note, as of the date written below.

Date of Conversion: August 7, 2019

Shares To Be Delivered: 654,585

Signature:________________________________________

Print Name: 0985358 BC Ltd

Address: [redacted]

| Date of Note | Principal Amount | Interest Accrued to Date | Principal Amount Converted | Interest Amount Converted | New Principal Balance Owing After Conversion | Shares to Be Delivered |
|---|---|---|---|---|---|---|
| April 6 2015 | $2,000.00 | $1,272.92 | $2,000.00 | $1,272.92 | $ - | 654584.05 |

# NOTICE OF CONVERSION

--------------------

(To be executed by the Holder to convert all or any portion of the Note)

The undersigned hereby elects to convert $3,000 of the principal and $1,909.38 of the interest due on the Note issued by County Line Energy Corp., on April 10th, 2015, into Shares of Common Stock of County Line Energy Corp. (the "Company"), according to the conditions set forth in such Note, as of the date written below.

Date of Conversion: August 7, 2019

Shares To Be Delivered: 981,868

Signature:____________________________________

Print Name: 0985358 BC Ltd

Address: [redacted]

| Date of Note | Principal Amount | Interest Accrued to Date | Principal Amount Converted | Interest Amount Converted | New Principal Balance Owing After Conversion | Shares to Be Delivered |
|---|---|---|---|---|---|---|
| April 10 2015 | $ 3,000.00 | $1,909.38 | $3,000.00 | $1,909.38 | $ 0.00 | 981876 |

# NOTICE OF CONVERSION

-------------------

(To be executed by the Holder to convert all or any portion of the Note)

The undersigned hereby elects to convert $0 of the principal and $3,452.05 of the interest due on the Note issued by County Line Energy Corp., on August 27th, 2015, into Shares of Common Stock of County Line Energy Corp. (the "Company"), according to the conditions set forth in such Note, as of the date written below.

Date of Conversion: August 7, 2019

Shares To Be Delivered: 690,411

Signature:__________________________________________

Print Name: 0985358 BC Ltd

Address: [redacted]

| Date of Note | Principal Amount | Interest Accrued to Date | Principal Amount Converted | Interest Amount Converted | New Principal Balance Owing After Conversion | Shares to Be Delivered |
|---|---|---|---|---|---|---|
| August 27 2015 | $ 12,000.00 | $9,148.10 | $ - | $3,452.05 | $ 17,696.05 | 690410.16 |

**BAUMAN & ASSOCIATES LAW FIRM**
**FREDERICK C. BAUMAN**
**Attorney-at-Law**
**Nevada Bar No. 8370**
**6440 Sky Pointe Dr., Ste 140-149**
**Las Vegas, NV 89131 U.S.A.**
**www.lawbauman.com**
**(702) 533-8372**
**(800) 991-8697**
**fred@lawbauman.com**

August 8, 2019

Action Stock Transfer Corp.
2469 E Ft Union Blvd, #214
Salt Lake City, UT 84121

Re: 4(a)(1) opinion – 5,299,999 shares of County Line Energy Corp. Common Stock (ticker: "CYLC") held by 0985358 BC Ltd. ("Shareholder") issued as a result of debt conversion

Ladies and Gentlemen,

Our opinion has been requested concerning the above-referenced 5,299,999 shares (the "Shares") of common stock of County Line Energy Corp., a Nevada corporation (the "Issuer" or the "Company"). The Shares are being issued to Shareholder as a result of the conversion of principal and accrued interest on five separate Convertible Notes (collectively, the "Note") in favor of Shareholder dated:
February 2, 2015, original principal amount $7,500 – entire note converted to 2,305,956 Shares;
March 30, 2015, original principal amount $2,000 – entire note converted to 667,172 Shares;
April 6, 2015, original principal amount $2,000 – entire note converted to 654,585 Shares;
April 10, 2015, original principal amount $3,000 – entire note converted to 981,876 Shares; and
August 27, 2015, original principal amount $12,000 - $3,452.05 interest converted to 690,410 Shares.

The notes were funded in a number of tranches, with the final funding on October 8, 2015. Therefore, the holding period for all of the notes began no later than October 8, 2015, more than two (2) years ago.

It is clear from a review of the documents submitted to us that the Issuer did not receive any additional consideration in connection with the exchange of the Note for the Shares. Also, in our opinion, the Note is a "security" under the family resemblance test adopted by the United States Supreme Court in the Reves v. Ernst & Young case. Therefore, the conversion was exempt under Section 3(a)(9) of the Securities Act of 1933. It has long been established that when securities are exchanged for other securities of the issuer under Section 3(a)(9), the securities received assume the character of the exchanged securities. Thus, for example, if unrestricted securities are exchanged, the unrestricted character of the former securities is preserved. In this case, since the Note was entitled to be unrestricted as the holding period exceeded

two (2) years, the Shares received in exchange for the Note under Section 3(a)(9) would also be unrestricted.

We are informed and assume for purposes of this opinion that Shareholder is not a current or former officer, director, 10% shareholder or other affiliate or insider of the Issuer. We note in this regard that the Shares are less than 10% of the Issuer's 59,105,141 outstanding shares of common stock at July 5, 2019 as per the OTCMarkets website. We have reviewed the documentation submitted by the Shareholder in connection with its proposed sale of the Shares and are of the opinion that the proposed sale is not part of an "offering" or "distribution" of shares of the Issuer and, accordingly that Shareholder is not an "underwriter." Accordingly, it is our opinion that sale of the Shares by Shareholder is exempt from registration under Section 5 of the Securities Act of 1933 by virtue of the exemption provided by Section 4(a)(1) thereof.

We are informed that the Shares constitute over 10% of the Issuer's float. As a result, we have exercised additional scrutiny concerning whether Shareholder's sale of the Shares might constitute a distribution. Accordingly, Shareholder has entered into a Customer Resale Agreement under which Shareholder has agreed that: (1) all sales of Shareholder's Shares will be made in compliance with the "brokers' transactions" and "manner of sale" provisions of Rule 144; (2) Shareholder will pay only the usual and customary brokerage commission in connection with any such sales; (3) Shareholder will not solicit or arrange for the solicitation of orders to buy any of the Shares; (4) Shareholder will not sell "short" shares of the Company's common stock or engage in a "short" investment strategy regarding shares of the Company's common stock while shares covered by this legal opinion letter remain unsold; and (5) Shareholder will provide me with documentation to verify compliance with the foregoing.

The Shareholder as seller ("Seller"), as well as the Issuer, has provided us with certain information as the foundation of this opinion. In this regard, we have been provided with background information, including information regarding how the Shareholder came to possess/own the Shares, including the consideration therefor, and answered other inquiries posed to Shareholder by us. The Shareholder has advised and represented that: (i) Shareholder acquired the Note at least two (2) years prior to the date hereof at which time the entire purchase price or other consideration for the Shares was paid or given to the Issuer; (ii) Shareholder does not beneficially own and has not owned, directly or indirectly, an amount greater than 9.9% of the Issuer's outstanding common stock; (iii) Shareholder is not a past or present "affiliate" of the Company, i.e., it did not possess, directly or indirectly, the power to direct or cause the direction of the management and policies of the Company nor was it controlled by or under common control with the Company, nor was either an affiliate within 90 days prior to Shareholder's purchase of the Shares (iv) Seller has a bona fide intent to sell or deliver the Shares and will place an order with the Broker-Dealer for such purpose.

We have analyzed the facts and circumstances presented to us within the framework of the Securities Act of 1933, including some of the scholarly treatises and articles authored addressing exemptions under Section 4(a)(1). In particular, our analysis of the governing Law has taught us that: (i) Shareholder acquired the Note at least two (2) years prior to the date hereof at which time the entire purchase price or other consideration for the Shares was paid or given to the Issuer; (ii) Shareholder does not beneficially own and has not owned, directly or indirectly, an amount greater than 9.9% of the issuers outstanding common stock; (iii) S hareholder is not a present or past "affiliate" of the Company, i.e., it did not possess, directly or indirectly, the power to direct or cause the direction of the management

and policies of the Company nor was it controlled by or under common control with the Company, nor was the Shareholder an affiliate of the Issuer during the three (3) months preceding the date hereof; (iv) the Seller has a bona fide intent to sell or deliver the Shares and will place an order with the Broker-Dealer for such purpose.

We have analyzed the facts and circumstances presented to us within the framework of the Securities Act of 1933, including some of the scholarly treatises and articles authored addressing exemptions under Section 4(a)(1). In particular, our analysis of the governing Law has taught us that: Section 4(a)(l) of the 1933 Act provides that "The provisions of Section 5 shall not apply to... (1) transactions by any person other than an issuer, underwriter or dealer."

We have established that the Shareholder is not an "issuer" or a "dealer." But can we rule out the possibility that the Shareholder was or is an "underwriter"? If Section 4(a)(l) is to exempt the Seller's proposed resale from the registration requirement of Section 5, it must be established that the Shareholder was not and is not an "underwriter" as defined in Section 2(11) of the 1933 Act.

It is apparent from Section 2(l1) that a seller of securities is not an "underwriter" unless a "distribution" is present. Although "distribution" is not defined 'in the 1933 Act, the SEC has stated that: "'Distribution'" ... comprises the entire process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in the hands of the investing public." The SEC and some courts have equated the term "distribution" with a "public offering."

The last sentence of Section 2(11) provides that for purposes of Section 2(11), the term "issuer" includes not only the actual issuer of a security but also persons in a "control" relationship with the issuer. For our purposes, these additional persons include the issuer's directors, executive officers and 10 percent or more shareholders.

It follows that if a "distribution" is involved, a seller of securities will be considered an "underwriter" to whom the Section 4(a)(1) exemption from registration will not be available, if any of the following apply:

- The seller purchased his or her securities from the issuer (or an affiliate of the issuer) with a view to their distribution.
- The seller is offering or selling for the issuer (or an affiliate of the issuer) in connection with the distribution of the securities.
- The seller participates or has a direct or indirect participation in any such distribution.
- Or, the seller participates or has a participation in the direct or indirect underwriting of any such distribution.

These four clauses are sometimes referred to as the "four tests of underwriter status." Thus, the term "underwriter" reaches well beyond the investment banking firm that arranges with an issuer for the public sale of its securities and can also include individual investors who are not professionals in the securities business. The effect of Section 4(a)(l) of the 1933 Act is to deny an exemption from registration to, and to subject to the registration process, resale transactions in which the reselling persons act as links

in a chain of transactions through which securities move from the issuer to the investing public. However, at the same time, it was intended that the 4(a)(l) exemption (sometimes called the ordinary trading exemption) be available for routine trading transactions between individual investors with respect to small amounts of securities already issued and having "come to rest" in the hands of the investing public.

Professors Loss and Seligman, in *Securities Regulation* (Little Brown and Co., 3rd Edition), explain that: "This section ... was intended to 'broadly [draw] the line between distribution of securities and trading in securities, indicating that the act is, in the main, concerned with the problem of distribution as distinguished from trading.'"

Professor Hazen, in *The Law of Securities Regulation* (West Publishing Co., 3rd Edition), notes that "Section 4[a](1), especially when read in connection with the dealers' and unsolicited brokers' transaction exemptions in Sections 4(3) and 4(4), exempts most day-to-day transactions that are effected on an exchange or in the over-the counter markets." Unfortunately, there is no objective standard in the language of the statute that makes it easy to distinguish resale transactions covered by the 4(a)(1) exemption from those that are not.

It is, however, the opinion of the author hereof, based exclusively on the information provided by the Seller, that **none** of the disqualifying factors of the four (4) clauses are present here. As a result, and presuming the information provided to us is factually accurate, the Seller may sell the shares that are the subject of this opinion in a broker's transaction free of restrictive legend. Consistent with the forgoing, the Seller may also sell the shares in a private transaction free of restrictive legend, and/or may otherwise dispose of its ownership interest in the shares without restrictive legend. Finally, it logically follows that the Seller may also either dispose of or maintain the shares without any restrictive legend affixed to the certificate.

**Section 4(a)(1) and the Holding Period**

The SEC has stated that "the basic purpose of holding period . . . is to provide a useful, simple test of probable underwriter status - that is, whether the original purpose was made for purposes of investment as opposed to distribution." SEC Release No. 33-6286. In enacting Section 4(a)(1), the Congressional comments state that the Section 4(1) exemption is meant to distinguish "between distribution of securities and trading in securities." Loss & Seligman, 2 Securities Regulation 627 (3rd ed. 1989) (*quoting* H.R. Rep. No. 85, 73d Cong., 1 Sess 15, 1933). (*See also* Holschuh 694 F.2d. *at* 137-138 "[The 1933 Act] was created to exempt routine trading transactions with respect to securities already issued and not to exempt distributions by issuers or acts of others who engage in steps necessary to such distributions.")

The statutory definition of "underwriter" is not found in §4, but rather in Section 2(11) of the Exchange Act: "The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security." The congressional intent in defining "underwriter" was to cover all persons who might operate as conduits for the transfer of securities to the public. T. Hazen, The Law of Securities Regulation Section 4.24, *at* 141 (1985) 73d Cong., 1st Sess. 13-14 (1933). Thus, "underwriter" is generally defined in close connection with

the definition and meaning of "distribution." *See* Eugene England, 663 F.2d at 989 ("An underwriter is one who has purchased stock from the issuer with an intent to resell to the public."); Ingenito v. Bermec Corp., 441 F.Supp. 525, 535 (S.D.N.Y. 1977) ("It is apparent that to be an underwriter within the meaning of the 1933 Act, one must participate, in some manner, in the distribution of the securities to the public.") The term "underwriter" thus focuses on "distribution." Given the statutory definition of "underwriter," the exemption should be available if (I) the acquisition of the securities was not made "with a view to" distribution; or the sale was not made "for an issuer in connection with" a distribution. *See* 15 U.S.C. § 77b(11)(1988); ABA Report, The Section "4(1 1/2 )" Phenomenon: Private Resales of "Restricted" Securities, 34 Bus. Law 1961, 1975 (July 1979); Hazen, The Law of Securities Regulation *at* Section 4.23, at 138. Relevant to both inquiries are whether the securities have come to rest in the hands of the security holder and whether the sale involves a public offering.

The inquiry depends on the distinction between a distribution and mere trading. If the shareholder initially acquired his shares from the issuer with an investment purpose and not for the purpose of reselling them, the acquisition was not made "with a view to" distribution. While this determination would at first seem to be a fact-specific inquiry into the security holder's subjective intent at the time of acquisition, the courts have considered the more objective criterion of whether the securities have come to rest. That is, the courts look to whether the security holder has held the securities long enough to negate any inference that his intention at the time of acquisition was to distribute them to the public.

If possible, we would include an analysis of recent case law in relation to the legal principles that underlie this opinion. However, our legal research has shown no recent case law relevant to these matters, the law in this regard being well established. We do address the so-called Worm / Wulff letters as follows. The Worm / Wulff letters date from 1999 and 2000 and expressed the view of the SEC's then staff to NASD (now known as FINRA) that Rule 144 was not available for shares in "blank check companies" under certain circumstances. These letters, which were and are without legal or regulatory force but informally set forth some views of the SEC staff over 15 years ago, were written before the concept of a "shell company" had developed, and there was at one time a debate over whether the views of the SEC staff therein expressed also applied to shell companies that were not blank check companies. We do not believe it necessary for us to resolve that debate in order to render this opinion, as a close review of the Worm / Wulff letters indicates that only "affiliates, promoters" and certain "purchasers who are mere conduits for a wider distribution of the securities" were deemed to be underwriters and therefore unable to rely on Section 4(1) (now Section 4(a)(1)) or Rule 144. As discussed above, Shareholder is not an affiliate or a promoter of the Issuer, and there is no evidence that it is a conduit in the underwriting process, as evidenced by its ownership of the Note for more than two (2) years.

Many courts have accepted a two-year rule of thumb to determine whether the securities have come to rest. *See* United States v. Sherwood, 175 F. Supp. 480, 483. (S .D.N.Y. 1959) ("the passage of two years before the commencement of distribution of any of these shares is an insuperable obstacle to any finding that Sherwood took these shares with a view to distribution thereof."). Prior to the 1997 amendments to Rule 144, which shortened the holding period from two years to one year, and from three years to two years (under then Rule 144(k)), Professor Loss noted that a three-year holding period is "well nigh conclusive" that securities were acquired without a view to distribution. L. Loss & J. Seligman, 2 Securities Regulation *at* 672. Shareholder has held the Note from which the Shares were derived for over two (2) years. In our opinion, Shareholder is not an underwriter.

**Conclusion**

For the above reasons, Shareholder is entitled to hold and sell the Shares free of a restrictive legend.

This opinion includes our opinion on Federal Securities law. This opinion letter is limited to the matters stated herein, and no opinion is implied or may be inferred beyond the matters expressly stated.

This letter is given solely to you, and may not be released to or relied upon by, nor is it intended to benefit, any other person or for any other purpose without our prior written consent. Nevertheless, this opinion may be relied upon by the stock transfer agent, the selling broker and its clearing firm, if any. This opinion expires for all purposes six (6) months after its date of issuance.

Very truly yours,

BAUMAN & ASSOCIATES LAW FIRM

By [signature]
Frederick C. Bauman